| | |
|---|---|
| 1 | The Honorable Robert J. Bryan |

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES D. MAYFIELD (Jackson et al.),<br><br>Defendant. | No. 3:92-CR-01781-4 RJB<br><br>MOTION FOR COMPASSIONATE RELEASE/SENTENCE REDUCTION PURSUANT TO 18 U.S.C. 3582(C)(1)<br><br>**NOTE ON MOTION CALENDAR:**<br>**February 26, 2021** |

## I.  INTRODUCTION AND RELIEF REQUESTED

Comes now the defendant, James D. Mayfield, by and through his attorney, Zachary W. Jarvis, and moves the court for release to either supervised release, a residential reentry center, or to home confinement. Mr. Mayfield has met the exhaustion threshold.[1] Mr. Mayfield previously survived COVID-19[2], but this fact, when aggregated with his weakened immune state[3] and an underlying health condition, provides little comfort should he become ill again. The risk of reinfection is real.[4] Mr. Mayfield, age 51, carries an underlying medical diagnosis of chronic kidney disease.[5]

---

[1] *Declaration of Zachary Jarvis*, at ¶¶ 5-6, **Exhibits A and B**
[2] *Decl. Jarvis at Exhibit C, p. 1-8.*
[3] Long-term impacts to the immune system and organs are observable in a significant number of those who have recovered from COVID-19. https://www.nature.com/articles/d41586-020-02598-6 (accessed 11/11/20).
[4] https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last accessed November 6, 2020); https://www.cdc.gov/coronavirus/2019-ncov/php/reinfection.html (last accessed November 9, 2020); *See* generally Decl of Jarvis at **Exhibit K** (Declaration of Dr. Viyajan, incorporated by reference hereto).
[5] Declaration of Zachary Jarvis at **Exhibit C**, at p. 10, 13, 28 and **Exhibit D** at p. 1,11.

MOTION FOR COMPASSIONATE RELEASE
*US v. James Mayfield,* 3:92-CR-01781-4 RJB

1

HART JARVIS MURRAY CHANG
155 NE 100TH STREET SUITE 210
SEATTLE, WA 98125
TEL: 206-735-7474
FAX: 206-260-2950

To the surprise of no one, the novel coronavirus persists within the Bureau of Prisons (BoP). A resurgence of infection may yet occur based upon on-going issues with BoP's containment response, which emphasizes lockdowns/solitary confinement rather than compassionate release.[6] Continued incarceration is excessively dangerous for Mr. Mayfield. Additionally, he has made commendable strides in improving himself during his decades of confinement, which are worth this Court's consideration. Under these circumstances, the Court should exercise its authority, undertake the appropriate analysis, and reduce his life sentence under 18 U.S.C. § 3582(c)(1) and USSG 18 U.S.C. 3553(a) based upon who he is today and his risk factors.

## II. FACTUAL BACKGROUND

**a. Mr. Mayfield's medical situation puts him at increased risk of complications if he (re)contracts COVID-19.**

Mr. Mayfield is in BoP custody serving a life sentence for his role in a horrific offense that occurred within Fort Lewis on December 4, 1992.[7] Specifically, the Pre-Sentence Report describes the senseless, premeditated murders of Allen Lamarr King, Sr. (age 25), James Anthony Gillard (age 7), Allen Lamarr King, Jr. (age 4), and Dominique Alexander King (age 18 months) by Jackson, Paige, and also Mayfield. *Id*. Somewhat reductively, the Government attributed the involvement and motivation of Mayfield, then a young father and member of the military with no prior criminal history, to being a "gang wannabee". PSR at 7. Jackson and Paige were actual gang members with significant narcotics trafficking involvement. *Id*. Mayfield, then aged 23, pled guilty on 5/21/93. *Id*. at 1. A sentence of life imprisonment was imposed by this Court on 7/21/93 (Dkt. 75).

Over twenty-seven years have now passed. Mr. Mayfield, now a grandfather, is currently at FCI Beaumont[8]. Mr. Mayfield's sons (in Texas and California respectively), his cousin, and sisters are each

---

[6] https://www.washingtonpost.com/politics/2020/10/05/warren-durbin-bop-letter/
[7] Pre-sentence Report at 1-7.
[8] A medium security federal correctional institution with 1,397 inmates. https://www.bop.gov/locations/institutions/bmm/

MOTION FOR COMPASSIONATE RELEASE     2     HART JARVIS MURRAY CHANG
*US v. James Mayfield,* 3:92-CR-01781-4 RJB            155 NE 100TH STREET SUITE 210
                                                       SEATTLE, WA 98125
                                                       TEL: 206-735-7474
                                                       FAX: 206-260-2950

concerned about him based upon his underlying health, his recent bout with the virus, and the on-going outbreak of disease at the institution in Beaumont. Even after all of this time, Mr. Mayfield has a robust family support system around him. The risk of reinfection, new variants of the virus, as well as an unclear outlook for the vaccination of federal inmates[9] heighten their concern. FCI Beaumont, where Mr. Mayfield is housed, publicly reports 40 inmate cases and 12 staff cases of infection.[10]

At Beaumont[11], Mr. Mayfield reports near constant lockdown, unsanitary conditions, and contradictory information from staff. He self-reports he is currently housed in Unit PB with 120 other men. While his security placement is "medium", his custody level score is "low". He is confined most of the day in a two-man cell and uses the top bunk. He reports they are given only 5-15 minutes outside of the cell daily to shower or use the phone. Mayfield reports that everyone's hygiene is deplorable and masks are only required outside of the two-man cells. Common areas of the unit are not sanitized, nor are the phones or the computers. There is currently no visitation or programming. There is no access to fresh air, sunshine, or recreation. There is, overall, very little human interaction or deviation from lockdown.

Mr. Mayfield was diagnosed with chronic kidney disease (CKD)[12], but he has received little medical attention for the issue until recently. CKD is defined as a decrease in kidney function measured by glomerular filtration rate (GFR) or evidence of kidney damage (even with normal GFR), such as increased albuminuria, abnormal urine sediment or structural abnormalities persisting for greater than three months, with implications for health.[13] Mayfield reports he has been "under observation" and is to

---

[9] " The Federal Bureau of Prisons says it has started to give the coronavirus vaccine to some high-risk inmates but won't say how many inmates have been vaccinated or how it selects those to receive the vaccine…" https://apnews.com/article/coronavirus-pandemic-prisons-d2c1a3013351ed42cf75a194e4661cf3 (dated 12/22/20)
[10] https://www.bop.gov/coronavirus/ (accessed 2/17/21).
[11] The unfolding humanitarian crisis involving freezing weather and power outages in Texas is almost certainly affecting the facility, Mayfield, and Mr. Mayfield's family to varying degrees. Counsel is unable presently to communicate with his client. https://www.nytimes.com/2021/02/18/us/texas-water-crisis-winter-storm.html?action=click&module=Spotlight&pgtype=Homepage; https://www.cnn.com/2021/02/17/us/texas-winter-storm-vignettes-trnd/index.html
[12] *Decl. Jarvis*, **Exhibit C** at p. 10, 13, 28.
[13] Kidney Disease: Improving Global Outcomes CKD Work Group. KDIGO 2012 clinical practice guideline for the evaluation and management of chronic kidney disease. *Kidney Int Suppl* 2013; 3: 1–150.

MOTION FOR COMPASSIONATE RELEASE　　3　　HART JARVIS MURRAY CHANG
*US v. James Mayfield,* 3:92-CR-01781-4 RJB
155 NE 100TH STREET SUITE 210
SEATTLE, WA 98125
TEL: 206-735-7474
FAX: 206-260-2950

be reassessed every six months. He has received a medication only very recently in late December (Tamsulosin HCI, 0.4 mg capsules).[14] It is prescribed apparently for prostate issues and the interrelation with kidney disorder is unclear from the records. Mr. Mayfield reports he has not received any written materials about his condition. He reports frequent urination and constant worry that his condition is worsening. According to the CDC, adults of any age with chronic kidney disease are at increased risk of severe illness from COVID-19.[15] Having chronic kidney disease of **any stage** increases risk for severe illness.[16] Additional authorities indicate similar conclusions.[17] A contemporary systematic review and meta-analysis of 76,993 patients presented in 10 articles listed CKD among the seven most prevalent coexisting diseases (alongside hypertension, CVD and DM) among hospitalized COVID-19 patients.[18]

His recent bout with COVID-19 was symptomatic and included headache, cough, lower back pain, shortness of breath, and loss of sense of smell.[19] He was in isolation from 8/31/20 to 9/9/20.[20] He reports lingering symptoms of loss of smell, mild headaches, and periodic shortness of breath. The danger of a COVID-19 infection does not end with a negative test. COVID-19 has lasting impacts on the body. "[M]any patients suffer debilitating long-term aftereffects from the coronavirus"—including lasting heart and lung damage.[21] A recent article explained: "[T]he most notable potential long-term impacts that are already showing up in some COVID-19 patients" have included lung scarring and reduced lung capacity, abnormal blood clotting that can cause strokes, lung blockages, and heart attacks, cardiac

---

[14] *Decl. Jarvis*, **Exhibit D** at p. 4, 10, 14.
[15] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#chronic-kidney-disease (accessed 2/14/21)
[16] *Id*. (**emphasis added**).
[17] https://www.kidney.org/covid-19 (accessed 2/11/21) (People with kidney disease are at higher risk for developing serious complications from COVID-19. The best way to protect oneself is to avoid being exposed to this virus.)
[18] Emami A, Javanmardi F, Pirbonyeh N et al. Prevalence of underlying diseases in hospitalized patients with COVID-19: a systematic review and meta-analysis. *Arch Acad Emerg Med* 2020; 8: e35
[19] *Decl, Jarvis* at Exhibit C at pp.1-8.
[20] *Decl. Jarvis*, Exhibit C p.1-2.
[21] Jackeline Howard, "Covid-19's 'serious, long-term impact' can improve with time, early evidence suggests," CNN (Sept. 5, 2020), https://www.cnn.com/2020/09/06/health/covid-19-long-term-effects-study-wellness/index.html.

MOTION FOR COMPASSIONATE RELEASE
*US v. James Mayfield,* 3:92-CR-01781-4 RJB

4

HART JARVIS MURRAY CHANG
155 NE 100TH STREET SUITE 210
SEATTLE, WA 98125
TEL: 206-735-7474
FAX: 206-260-2950

damage leading to heart failure, and a slew of neurological issues.[22] Even for those with a mild to moderate form of the disease, "return to their former health trajectory is slow and painful."[23]

Instances of reinfection with COVID-19, while so far rare, are a reality.[24] The CDC recognizes that it is possible for an individual who had COVID-19 to become infected again by the virus, albeit some months after recovery. The CDC provides the following advice:

> The immune response, including duration of immunity to SARS-CoV-2 infection is not yet understood. Patients infected with other betacoronaviruses (MERS-CoV, HCoVOC43), the genus to which SARS-CoV-2 belongs, are unlikely to be re-infected shortly (e.g., 3 months or more) after they recover. However, more information is needed to know whether similar immune protection will be observed for patients with COVID-19.

See Transmission, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last accessed 2/14/21); *see also United States v. Heyward*, Case No. 17-cr-527, d/e 83-1 (D.Md June 30, 2020). New, possibly vaccine resistant, variants of the virus are a growing area of concern.[25]

Persons like Mayfield should follow all recommended precautions to avoid (re)infection. Such precautions, per the CDC, include things such as: social distancing, personal hygiene, wearing a mask, as well as cleaning and disinfecting spaces.[26] Maintaining such precautions appears impossible in secure confinement.[27] It is a reasonable inference that conditions of confinement also impact the level and quality of necessary medical treatment Mr. Mayfield already receives due to staffing issues, lockdown protocols, as well as challenges in terms of medical isolation within the institution.

---

[22] *See* Lois Parshley, *The emerging long-term complications of Covid-19, explained*, Vox (June 12, 2020), https://www.vox.com/2020/5/8/21251899/coronavirus-long-term-effects-symptoms; *see also What we know (so far) about the long-term health effects of Covid-19*, Advisory Board (June 2, 2020), https://www.advisory.com/daily-briefing/2020/06/02/covid-health-effects.
[23] *Id*.
[24] https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html
[25] https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant.html (accessed 2/2/20).
[26] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html; https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.
[27] *See Also*: Ctrs. for Disease Control & Prevention, Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last accessed June 29, 2020)

MOTION FOR COMPASSIONATE RELEASE
*US v. James Mayfield,* 3:92-CR-01781-4 RJB

5

HART JARVIS MURRAY CHANG
155 NE 100TH STREET SUITE 210
SEATTLE, WA 98125
TEL: 206-735-7474
FAX: 206-260-2950

Further, the CDC has noted hospitalization and death rates for African-Americans are "substantially higher" than that for whites, adding yet another elevated risk for Mr. Mayfield. *See* "COVID-19 in Racial and Ethnic Minority Groups" (a listing under "People Who Need Extra Precautions – Others at Risk," CDC)[28]:

> The effects of COVID-19 on the health of racial and ethnic minority groups is still emerging; however, current data suggest a disproportionate burden of illness and death among racial and ethnic minority groups. [The] data suggest an overrepresentation of blacks among hospitalized patients. Among COVID-19 deaths for which race and ethnicity data were available [in New York] death rates among Black/African American persons . . . were substantially higher than that of white . . . persons [more than double]. Studies are underway to confirm these data and understand and potentially reduce the impact on the health of racial and ethnic minorities.

Mayfield is a member of the at-risk population. The situation at FCI Beaumont could still further degrade prior to widespread vaccination. Release consistent with 18 U.S.C. § 3553(a) is appropriate after he has served 27-and-one half years of a life sentence and based upon who he is today as addressed below.

> **b. Mr. Mayfield's individual circumstance of rehabilitation warrants this Court's consideration under the "catch-all" provision.**

This Court may also independently determine "extraordinary and compelling" reasons under Sentencing Commission commentary Note 1(D), or the "catch-all provision", because the language "as determined by the Director of the Bureau of Prisons" conflicts with the plain language of the First Step Act's amendment of the compassionate release statute. Since the Sentencing Commission has not amended its policy statement or commentary after the passage of the First Step Act and Note 1(D) contradicts the First Step Act's amendment to section 3582(c)(1)(A)(i), and so this Court may independently make a determination. Mr. Mayfield asks this Court to review his rehabilitation as documented below and in the cited, supporting materials documenting who he is today.[29]

### III. LEGAL ARGUMENT

**a. The Legal Standard**

---

[28] Available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html.
[29] *Decl. Jarvis* at **Exhibits F, G**.

Before filing a motion to reduce his sentence, a defendant must first ask the warden of the facility to file a motion on the defendant's behalf. 18 U.S.C. § 3582(c)(1)(A). If the warden denies the defendant's request or the warden takes longer than 30 days to respond, then the defendant may file his own motion to reduce his sentence. *Id.*

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The policy statement says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." U.S.S.G. § 1B1.13. The policy statement also directs consideration of the factors set forth in 18 U.S.C. § 3553(a). U.S.S.G. § 1B1.13 cmt. n.4. Combined, the policy statement and 18 U.S.C. § 3582(c)(1)(A) create a three-step process for ruling on a motion for compassionate release: the court must first decide whether "extraordinary and compelling reasons warrant . . . a reduction [in the defendant's sentence]," then determine whether "the defendant is . . . a danger to the safety of any other person or to the community," and finally assess whether a reduction in the defendant's sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

### b. Exhaustion of Administrative Remedies

Unable to ascertain initially what efforts Mayfield had made, Counsel submitted a BP9 equivalent on behalf of Mayfield on December 7, 2020. *Decl. Jarvis* ¶ 6, **Ex. A**. Mr. Mayfield submitted to his institution a BP-9 equivalent application for administrative remedy related to compassionate release on December 11, 2020, which has gone unanswered as of the date of this filing. *Decl. Jarvis* ¶ 6, **Ex. B**. These institutional requests both by Mr. Mayfield and by Counsel have gone unanswered after the passage of 30 days. *Decl. Jarvis* ¶ 6, 7 and **Ex B**. Mr. Mayfield meets the First Step Act's exhaustion requirement. *See, e.g., United States v. Haney*, __ F. Supp. 3d __, 2020 WL *1821988*, at *3 (S.D.N.Y. Apr. 13, 2020) (to satisfy § 3582(c)'s exhaustion requirement, a defendant must either exhaust

administrative remedies within the BOP or "simply [ ] wait 30 days after serving his petition on the warden of his facility before filing a motion in court."). In addition, "[e]xhaustion occurs when the BOP denies a defendant's application[.]. *United States v. Mondaca*, No. 89-cr-oo655-DMS, 2020 WL 1029024, at 2 (S.D. Cal. March 3, 2020) (internal citations omitted).

### c. Extraordinary and Compelling Circumstances

18 U.S.C. Section 3582(c) "provides a path for defendants in 'extraordinary and compelling circumstances' to be released from prison early." *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) (citing U.S.C. Section 3582(c)(1)(A)). A number of district courts have determined that "extraordinary and compelling" reasons for compassionate release exist "when the prisoner suffers from preexisting health conditions that might make a COVID-19 infection more lethal." *United States v. O'Neil*, No. 3:11-cr-00017, 2020 WL 2892236 at 6 (S.D. Iowa June 2, 2020).

Mr. Mayfield had symptomatic COVID-19. While the current state of the science tells us reinfection occurs rarely, "the Court must err on the side of caution to avoid potentially lethal consequences for [Defendant]." *United States v. Yellin*, Case No. 3:15-CR-3181-BTM-1, 2020 WL 3488738, at 1-2 (S.D.Cal. June 26, 2020) (finding extraordinary and compelling reasons exist where COVID positive inmate at Terminal Island, who did not develop severe symptoms, had a combination of medical conditions that made him at risk of COVID complications). In addition to his prior infection with the virus itself, Mr. Mayfield's medical condition of chronic kidney disease squarely puts him at higher risk should he become reinfected.[30] CKD has also been previously considered within this context.[31]

---

[30] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

[31] *United States v. Young*, 2020 WL 2614745, at 2 (W.D. Wash. May 22, 2020) (64 years old, hypertension and chronic kidney disease, African American); *United States v. Dusenbery*, 2020 WL 6694408, at 2 (N.D. Ohio Nov. 13, 2020) (High blood pressure, chronic kidney disease, respiratory issues*)*; *United States v. Pierce*, 2020 WL 7406794, at 1 (D. Nev. Dec. 14, 2020) (Type 2 diabetes, hypertension, hyperlipidemia, hyperthyroidism, chronic kidney disease); *United States v. Norris*, 2020 WL 6583084, at 1 (S.D. Ind. Nov. 10, 2020) (Hypertension, obesity, chronic kidney disease, 58 years old); *United States v. Harper*, Cr-06-16-BLG-BMM, Dkt. 905 (D. Montana, August 13, 2020 (58 years old, chronic kidney disease); *United States v. Hayden*, 2020 WL 4218503, at *1 (N.D. Ind. July 23, 2020).

MOTION FOR COMPASSIONATE RELEASE
*US v. James Mayfield,* 3:92-CR-01781-4 RJB

8

HART JARVIS MURRAY CHANG
155 NE 100TH STREET SUITE 210
SEATTLE, WA 98125
TEL: 206-735-7474
FAX: 206-260-2950

Mayfield is obviously serving a life sentence for the most serious of crimes. This does not mean that sentence reduction is inaccessible to him. Courts around this country have granted sentence reductions in circumstances of life sentences based upon the health risks to the individual often coupled with those person's exemplary efforts at rehabilitation and/or age.[32] The same has occurred in violent offenses.[33]

---

[32] *United States v. Blanco*, 4:93-cr-20042-CW, ECF No. 2784 (C.D. Cal. Dec. 14, 2020) (reducing life sentence in methamphetamine and PCP distribution case based on deft's rehabilitation, lengthy sentence compared to that which he would receive today, and his age and medical conditions of chronic hepatitis C and essential hypertension); *United States v. Jaen*, 91-cr-814, ECF No. 505 (S.D. Fla. July 6, 2020) (reducing life sentence to time served for 81-year old convicted of 600-lb cocaine distribution and assault on federal officer); *United States v. Rice*, Case No. 1:03-cr-441 (D.D.C. July 8, 2020) (reducing life sentence to approximately 16.5 years); *United States v. Rodriguez-Barron*, Case No. 2:94-cr-00559-GW (C.D. Cal. Jul. 9, 2020) (reducing then mandatory life sentence based on health conditions and COVID); *United States v. Barron*, 2:94-559-GW, Dkt. 424 (C.D. Cal. Jul. 10, 2020) (reducing life sentence based on age and health conditions); *United States v. Parker*, Case No. 2:98-cr-00749-CAS-1, 2020 WL 2572525, at 14 (C.D. Cal. May 21, 2020) (reducing life sentence to approximately 22 years, time served for 65-year-old defendant experiencing deteriorating health and particularly susceptible to COVID-19); *United States v. Barrenechea*, Case No. 92-cr-00403-MMC-3, 2020 WL 2315638, at 1 (N.D. Cal. May 7, 2020) (granting compassionate release and reducing life sentence to 332 months time served for defendant with increased risk of illness from COVID-19; *United States v. Kubinski*, No. 3:93-cr-28 (EDNC May 13, 2020) (reducing life sentence based on age and deterioration in physical health); *United States v. Curtis*, No. 03-cr-533, 2020 WL 1935543 (D.D.C. Apr. 22, 2020) (granting compassionate release to a 43-year-old defendant who had served 17 years of life sentence for sex trafficking children based on his advanced MS, Covid-19, and changes to the career offender guideline); *United States v. Ledezma-Rodriguez*, No. 3:00-cr-71 (S.D. Iowa July 14, 2020) (mandatory life from two 851s would no longer apply and finding sentencing disparity combined with rehabilitation, COVID-19, and a dependent family member justified release).

[33] *See United States v. Wooton*, Case No. 04-20487-cr-MCC, DE 603 (S.D. Fla. Sept. 2, 2020) (granting compassionate release to a "large scale drug trafficker" convicted of Hobbs Act robbery and possession of a firearm in in furtherance of drug trafficking, who was present during the kidnapping and assaulting one of his coconspirators and his 3 year old goddaughter, at which time firearms were brandished); *United States v. Stubbs*, Case No. 2:99-cr-00175-DWA, DE 367 (W.D. Pa. Aug. 13, 2020) (granting compassionate release to defendant convicted of armed bank robbery, and use of a firearm during a crime of violence; finding "conviction of serious crimes such as Defendant's are not an absolute bar to compassionate release;" emphasizing that the Court must "consider Defendant as he stands before the court today"); *United States v. Strain*, Case No. 97cr-00004-TMB-SAO (D. Alaska July 29, 2020) (granting compassionate release to a defendant convicted of Hobbs Act robbery, and three counts of using a firearm in relation to a crime of violence; although such offenses were "extremely serious," the defendant was now 23 years older, and her "exemplary conduct while incarcerated demonstrates that she is ready, willing, and able to be a law-abiding member of the community"); *United States v. Lewis*, Case No. 10-cr-60292-DMM, DE 280 (S.D. Fla. July 20, 2020) (granting compassionate release to an at-risk defendant convicted of a kidnapping and § 924(c) offense that involved brandishing; in rejecting government's argument that compassionate release should be denied due to the serious nature of the offense and the defendant's ability to reoffend once released, noting that the defendant had already served the majority of his sentence, and upon release he would be monitored by probation officers "which will lessen the likelihood that he will reoffend"); *United States v. McPherson*, ___ F. Supp.3d ___, 2020 WL 1862596, at *5 (W.D. Wash. Apr. 14, 2020) (granting compassionate release to defendant convicted of armed bank robbery, and two counts of using a firearm in connection with a crime of violence under § 924(c); in rejecting government's danger to the community argument, rightly pointing out that "[t]he Defendant is facing five years of supervised release – limitations on his freedoms – during which he can be quickly returned to custody if he shows signs of likely recidivism"); *United States v. Scott*, Case No. 7:98-cr-79-BO,

MOTION FOR COMPASSIONATE RELEASE
US v. James Mayfield, 3:92-CR-01781-4 RJB

9

HART JARVIS MURRAY CHANG
155 NE 100TH STREET SUITE 210
SEATTLE, WA 98125
TEL: 206-735-7474
FAX: 206-260-2950

This Court recently reduced the 240-month sentence of Mr. Dunigan, who was convicted of Kidnapping Resulting in Death, based upon his exemplary rehabilitation and individual health circumstances (including his prior COVID-19 infection). *United States v. Dunigan*, 3:05-cr-05823-RJB (1/22/21).

### d. Danger to the Safety of Other Persons or to the Community

Before granting compassionate release, and "[e]ven where extraordinary and compelling reasons exist," the court must also "consider whether the defendant is 'a danger to the safety of any other person or the community[.]'" *Mondoca,* 2020 WL 1029024 at 3. To make this assessment, the Court considers a number of factors "including, among other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to anyone or community that release would impose." *Id.*

Mr. Mayfield is not dangerous today, and there exist significant protective factors. Mr. Mayfield's risk of recidivism is greatly reduced based on his age.[34] He is a valued person within the institution as the near-glowing recommendations from staff attest.[35] He has demonstrated compassion, empathy and, through his work ethic, the capacity to function well on supervision.[36] He has assisted others, from young inmates to the elderly, and has been a valued and respected employee. *Decl. Jarvis*, **Ex. G**. He has participated in a variety of programming that demonstrates he is doing everything he can

---

DE 317 (E.D.N.C. Feb. 4, 2020) (granting compassionate release to defendant convicted of Hobbs Act robbery and multiple counts of using and carrying a sawed-off shotgun and other firearms during and in relation to crimes of violence; finding defendant's service of a lengthy term of incarceration was "sufficient to provide both specific and general deterrence," and that it was significant that during his extended incarceration, he had incurred only two disciplinary infractions and none in the last 10 years; in addition to his good conduct while incarcerated, his significant family support mitigated against a finding that he remained a risk to the community today).

[34] Sentencing Commission research shows that the likelihood of recidivism declines as age increases. *See* U.S. Sent'g Comm'n, *Recidivism Among Federal Offenders* at 23, 27 (2016); *Measuring Recidivism: Under Criminal History Computation of the Federal Sentencing Guidelines* (May 2004); Sampson and Laub, *Life Course Desisters: Trajectories of Crime Among Delinquent Boys Followed to Age 70.* CRIMINOLOGY*, Vol. 41 No. 3 (2003).*
[35] *Decl. Jarvis* at **Exhibit G.**
[36] *Decl. Jarvis* at **Exhibit F, G.**

MOTION FOR COMPASSIONATE RELEASE  10  HART JARVIS MURRAY CHANG
*US v. James Mayfield,* 3:92-CR-01781-4 RJB
155 NE 100TH STREET SUITE 210
SEATTLE, WA 98125
TEL: 206-735-7474
FAX: 206-260-2950

to maintain and improve his mind. *Decl. Jarvis*. at **Ex. F**. He has incurred no infractions since 1996. *Id.* at **Ex. E**. Over the span of decades, Mayfield has managed to maintain close ties in Texas and elsewhere with numerous family members and friends. *Decl. Jarvis* at **Ex. H**. Additionally, this court also has the authority to impose a term of supervised release commensurate with the balance of Mr. Mayfield's remaining term of imprisonment for the remainder of his lifetime under 18 U.S.C. § 3582(c)(1)(A).

  **e. Application of the Sentencing Factors Contained at 18 U.S.C. §3553(a).**

  The last step is to apply the § 3553(a) factors to decide whether Mr. Mayfield should be granted compassionate release. *See* § 3582(c)(1)(A). Mr. Mayfield and his co-defendants' underlying offense was as grievous as can be imagined, and that cannot be changed. The question Mayfield poses to this Court is whether his characteristics have improved during his decades of serving his sentence. He is a different person than he was art twenty-three. He has used his 27 years of prison time productively, both for the benefit of others and personal development (s*ee Decl. Jarvis*, **Ex. F and G**). He has family support, numerous housing options, and a satisfactory release plan. He plans to drive trucks and has been in communication with an employer. His rehabilitation should be seen as extraordinary and compelling and should be seen to buttress his health-related reasons articulated above.

  Mayfield hopes the serious way in which he has served his sentence reflects the seriousness of his role in these crimes and constitutes just punishment that would promote respect for the law. The time he has served has afforded adequate deterrence to criminal conduct and has amply protected the public. Further incarceration would serve no purpose for him or the public. Mayfield is safe to be at large and poses no danger provided he adhere to appropriate conditions of supervised release.

  Mr. Mayfield has taken extensive advantage of programming and educational opportunities to better himself while incarcerated.[37] Prior to the pandemic, he had been employed working in Federal Prison Industries-UNICOR as the tool room clerk. *Decl. Jarvis* at **Ex G**. His performance in that role has

---

[37] *Decl. Jarvis* at **Exhibit F**.

MOTION FOR COMPASSIONATE RELEASE   11   HART JARVIS MURRAY CHANG
*US v. James Mayfield,* 3:92-CR-01781-4 RJB     155 NE 100TH STREET SUITE 210
                                         SEATTLE, WA 98125
                                         TEL: 206-735-7474
                                         FAX: 206-260-2950

been exceptional per his supervisors. *Id*. Counsel has confirmed he had been enrolled at the International Christian College and Seminary of Debary, Florida, working towards an associates degree in theological studies (prior to issues associated with the pandemic). From helping in the chapel, teaching piano, assisting staff and peers, volunteering for the Institution's graduations, job fairs, and holiday programs, Mayfield has shown himself to be a model for others. *Decl. Jarvis* at **Ex G**. Per one of his supervisors:

> "Inmate Mayfield has compassion for others., which is highly unusual here. I have on many occasions observed him interacting with the elderly, even going out of his way to assist those that are wheelchair bound and/ or otherwise in need of help."

*Id*. (D. Moton, VT Coordinator).

Today, he also has multiple potential release addresses with family members in Texas. He has a robust release plan that accounts for housing, and an extensive support system of contacts. *Decl. Jarvis* at **Ex. H**. Mr. Mayfield has numerous relatives who have offered their homes to him, which is telling after so many years out of society. *Id*. He plans to drive trucks and provided Counsel with detailed information on the Texas company he aspires to work with.

The goal of any sentencing is a sentence "sufficient, but not greater than necessary" to meet the goals of § 3553(a). One of those goals is, of course, punishment. This Court made such a determination at as to the quantum of punishment necessary to sanction Mr. Mayfield and others, life sentences. Under *Pepper v. United States*, 562 U.S. 476, 490-93 (2011), however, the Court should now consider post-offense developments under § 3553(a). The overriding factors under § 3553(a) that were not present at the time of sentencing are the COVID-19 pandemic (the individual risk it presents), as well as Mayfield's substantial efforts toward rehabilitation. The manner in which Mayfield has conducted himself during incarceration and his age are important factors. The sentencing purpose of just punishment does not warrant a sentence that includes on-going exposure to life-threatening illness. The enhanced punishment he currently experiences is not based on inherent misconduct by Mr. Mayfield. The risk of re-exposure, and also the daily conditions of confinement (lockdown, truncated programming, and deprivation of access to family) result in far greater punishment than a usual sentence--even a life sentence.

MOTION FOR COMPASSIONATE RELEASE
*US v. James Mayfield,* 3:92-CR-01781-4 RJB

12

HART JARVIS MURRAY CHANG
155 NE 100TH STREET SUITE 210
SEATTLE, WA 98125
TEL: 206-735-7474
FAX: 206-260-2950

**IV. CONCLUSION**

For the reasons set out in this motion, compassionate release is warranted for Mr. Mayfield. Mr. Mayfield's release to the less risky environment of supervised release/home confinement could not only protect him from increased risk of complications associated with reinfection, but also improve staff-to-inmate ratios in regard to the spread of the disease where he no longer presents a danger after his decades of incarceration and positive conduct.

DATED this 18th day of February, 2021.

Respectfully submitted,

/S/Zachary W. Jarvis
Zachary Jarvis, WSBA No. 36941
Attorney for James Mayfield
Hart Jarvis Murray Chang PLLC
155 NE 100th Street Suite 830
Seattle, WA 98125
206-735-7474
zjarvis@hjmc-law.com

MOTION FOR COMPASSIONATE RELEASE
*US v. James Mayfield,* 3:92-CR-01781-4 RJB

13

HART JARVIS MURRAY CHANG
155 NE 100TH STREET SUITE 210
SEATTLE, WA 98125
TEL: 206-735-7474
FAX: 206-260-2950

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18th, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all participating counsel for this cause number.

/S/Zachary W. Jarvis

WSBA No. 36941
Attorney for MAYFIELD
Hart Jarvis Murray Chang PLLC
155 NE 100th Street Suite 830
Seattle, WA 98125
206-735-7474
206-260-2950
zjarvis@hjmc-law.com

MOTION FOR COMPASSIONATE RELEASE
US v. James Mayfield, 3:92-CR-01781-4 RJB

14

HART JARVIS MURRAY CHANG
155 NE 100TH STREET SUITE 210
SEATTLE, WA 98125
TEL: 206-735-7474
FAX: 206-260-2950